### CUMMINGS v. CLARK et al.

(Circuit Court of Appeals, Third Circuit. November 14, 1924.)

#### No. 3184.

Corporations ⊂⇒118—Contract to deliver stated number of shares of stock not performed by delivery of less number on different capitalization basis.

A contract by plaintiff to deliver to defendants, who were engaged in marketing railway securities, the stock of a reorganized railway corporation, to be capitalized for $750,000, *held* not performed by a tender of $142,000 of stock, though under a new law of the state the issue of stock by the new company was limited to that amount.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Walter J. Cummings, executor of the will of John J. Cummings, deceased, against Edward W. Clark and others, partners as E. W. Clark & Co. Judgment for defendants, and plaintiff brings error. Affirmed.

For opinion below, see 282 F. 300.

Roland S. Morris and Duane, Morris & Heckscher, all of Philadelphia, Pa., for plaintiff in error.

Joseph S. Clark, Paul C. Wagner, and Henry A. McCarthy, all of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Walter J. Cummings, a citizen of Illinois and executor of John J. Cummings, brought suit against Edward W. Clark and others, citizens of Pennsylvania, to recover $290,000 alleged to be due the decedent under his contract with the defendants, dated March 11, 1913. The court below sustained defendants' demurrer to the plaintiff's statement of claim and entered judgment for the defendants. Whereupon this writ of error was sued out.

The case turns on the meaning of the contract, the third, fourth and eighth clauses of which are quoted in the margin.[1] Subsequent to the contract, the state of Illinois, by certain legislation and the procedure thereby created, made it impossible for Cummings to reorganize the railway company on the bond and stock basis provided by the contract, and in lieu thereof he procured the reorganization on a much lower basis, and instead of being able to deliver to the defendants 7,500 shares of capital stock, of the par value of $100 each, he was only able to deliver stock of the par value of $142,000. As this latter sum constituted all of the capital stock of the company he was able to reorganize, Cummings contended that the $750,000 capital stock of the intended reorganization and the $142,000 of

the actual reorganization equally represented the property of the company, and that the delivery of the latter ($142,000) was a compliance with his contract to deliver the former ($750,000).

After his death, his executor tendered the $142,000 stock as a fulfillment of the contract, and on the refusal of the defendants to accept he brought this suit. The court below sustained the defendants' view, and we are of opinion, rightly so.

The defendants were not engaged in operating street railways, but in marketing railway securities. By their written contract they agreed to accept stocks based on an agreed upon basis of capitalization. Evidencing that this basis was desired by them, and that no other was contemplated, the contract provided they were to bear "the additional expense caused by the increase of the capital stock and bonds of the reorganized company over and above," etc., and that, in case of Cummings' inability to reorganize and deliver the stock, "then said parties shall be exonerated from all obligations hereunder, except so far as the same have been completed." The contingency against which the parties provided, the legislation of Illinois, prevented Cummings from carrying out his contract, and we agree with the court below that the defendants were not

---

[1] "Third. Said first party represents to said second party that he has certain contracts with the bondholders' committee of the Alton, Jacksonville & Peoria Railway Company, relative to the purchase at foreclosure sale of the property of said railway company, and a further agreement by which said company shall be reorganized, and said first party agrees to cause the litigation now pending in the circuit court of Madison county, Illinois, to be proceeded with, and a sale of said railway made, the same to be purchased at said sale, and a new corporation to be organized by the purchaser with a common capital stock of seven hundred fifty thousand dollars ($750,000), to be divided into seventy-five hundred (7,500) shares, of the par value of one hundred ($100) each. All of such capital stock to be transferred and delivered to said second part; said new company to make and execute a first mortgage on its property to the First Trust & Savings Bank as trustee to secure an authorized issue of bonds aggregating two million ($2,000,000) dollars, of which amount five hundred thousand ($500,000) dollars shall be issued at the time of the making of said mortgage, the remaining one million five hundred thousand ($1,500,000) to be issued for extensions, betterments, and permanent improvements under proper restrictions to be set forth in the said mortgage securing said bonds, but only to the extent of eighty-five per cent. (85%) of the cost of such betterments, extensions, and improvements; the general form of the mortgage to be satisfactory to both parties hereto. Four hundred and fifty thousand ($450,000) dollars of said bonds to be delivered to or retained by the first party, payment of principal and interest thereof to be guaranteed by the East St. Louis & Suburban Railway Company, or by the East St. Louis & Suburban Company, or its successors, or by some company satisfactory to said first party. All of said bonds to bear interest at the rate of five per cent. (5%) per annum, payable semiannually, and to run for forty (40) years; the remaining fifty thousand ($50,000) dollars of said five hundred thousand ($500,000) dollars of said bonds shall remain in the treasury, but may be sold from time to time for the purpose of providing funds for the improvement of said railroad.

"Fourth. Said first party shall conduct or cause to be conducted the litigation with all due dispatch, it being understood and agreed that the sale and reorganization of the Alton, Jacksonville & Peoria Railway Company shall take place within one (1) year from the date hereof, and that said property at the time the shares of the capital stock are delivered to the second party, shall be turned over free and clear of all debts and obligations, except the mortgage bonds as above set forth: Provided, however, that in the event any decree of sale which may be made for the sale of said railroad and its property shall be appealed from, or in the event there are any legal obstacles interposed beyond the control of said first party, then such delay so caused as aforesaid shall not be computed in the time mentioned for the reorganization of said railroad and delivery of the stock as hereinabove set forth."

"Eighth. It is agreed that the additional expense caused by the increase of the capital stock and bonds of the reorganized company over and above five hundred thousand ($500,000) dollars of stock and four hundred fifty thousand ($450,000) dollars of bonds shall be borne by the second party."

bound to accept stock which was on a different capitalization basis from that of the contract. For the law to hold otherwise would practically be for the courts to write and enforce as a contract what the parties had never made their contract.

The judgment below is affirmed.

